# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

VERCIE L. LARK,

        Petitioner,      :      Case No. 2:19-cv-4160

  - vs -                        District Judge Edmund A. Sargus, Jr.
                                  Magistrate Judge Michael R. Merz

BRIAN COOK, Warden,
  Southeastern Correctional Institution,

                                  :
        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Vercie Lark under 28 U.S.C. § 2254, is before the Court for decision on the merits on the Petition (ECF No. 1), the State Court Record (ECF No. 3), and the Return of Writ (ECF No. 3).

Upon ordering an answer in the case, Magistrate Judge Vascura set a deadline for Petitioner to file a reply or traverse of twenty-one days after the Return of Writ. Because the Return was filed and served by mail on December 5, 2019, the time for Petitioner to file a reply expired on December 30, 2019 (See Fed.R.Civ.P. 6). However no reply has been filed.

The Magistrate Judge reference in this case has been transferred to the undersigned to help balance the Magistrate Judge workload in the District.

1

**Litigation History**

On April 21, 2017, a Fayette County grand jury indicted Lark on nine counts for various violations of the controlled substances laws. The case was tried to a jury on February 15, 2018. At the conclusion of the State's evidence, the trial judge dismissed Counts One, Five, and Seven. The jury found Lark not guilty as to Counts Two, Three and Four, but guilty as charged on Counts Six, Eight, and Nine. The trial judge then sentenced him to an aggregate term of imprisonment of fifty-one months. Lark appealed to the Twelfth District Court of Appeals which affirmed the conviction. *State v. Lark*, 2018-Ohio-4940 (Ohio App. 12th Dist. Dec, 10, 2018), appellate jurisdiction declined, 156 Ohio St. 3d 1453 (2019).

On March 8, 2019, Lark filed an application to reopen the direct appeal to litigate a claim of ineffective assistance of appellate counsel (State Court Record, ECF No. 3, Ex. 13). The Twelfth District denied the application. *Id.* at Ex. 14, appellate jurisdiction declined, 2019-Ohio-4003 (2019).

Lark then filed the instant habeas corpus petition, pleading three grounds for relief:

> **Ground One**: Insufficiency of the evidence.
>
> **Supporting Facts**: Petitioner states that the pre-arrest and trial delay violated his rights to due process, violating "fundamental conception of justice," which define the community's sense of fair play and decency.
>
> **Ground Two**: Trial court denied admission of exonerating and exculpatory evidence violating due process rights of Petitioner.
>
> **Supporting Facts**: The trial court erred when it excluded evidence of the written statement of James Tanner made on August 29, 2016. The court applied the hearsay rule mechanically to defeat the ends of justice.

> **Ground Three**: Appellate counsel failed to submit an assignment of error that trial counsel erred and was deficient for failing to raise the issue of prejudicial delay.
>
> **Supporting Facts**: The state violated due process and caused actual prejudice which was unjustifiable; the pre-indictment delay. The evidence from the record is sufficient to show pre-indictment delay as the State of Ohio made the declarant unavailable to the Defendant and his counsel.

(Petition, ECF No. 1, PageID# 5-8).

# Analysis

**Ground One: Conviction Based on Insufficient Evidence**

In his First Ground for Relief, Lark claims he was convicted on insufficient evidence[1]. Respondent concedes this claim is preserved for merits review in habeas corpus.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the

---

[1] The "supporting facts" portion of this claim as pleaded in the Petition appears to be in support of the Third Ground for Relief rather than the First.

> responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate

court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S.

Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In this case, the Twelfth District considered Lark's claim that his conviction was not supported by sufficient evidence in conjunction with his state-law claim that it was against the manifest weight of the evidence. The appellate court concluded:

> [*P2] On August 18, 2016, appellant was booked into the Fayette County Jail and was placed in cell number 338, which was commonly known as the "12-man cell." Shortly after appellant's placement in this cell, officers at the jail received a tip from another inmate, C.C., that appellant and inmate James Tanner had illegal narcotics in the 12-man cell. Fayette County Sheriff's Deputies employed at the jail conducted a search of the cell on August 27, 2016. The deputies recovered a baggie containing three smaller baggies near appellant's bunk, located by the shower area. One of the smaller baggies contained a brown substance, another baggie contained a crystalline substance, and the third baggie contained an off-white substance. Testing of these substances by the Ohio Bureau of Criminal Investigation ("BCI") indicated that the brown substance was fentanyl, the crystalline substance was methamphetamine, and the off-white substance was cocaine.
>
> [*P4] At trial, the state presented testimony from C.C., four officers who were involved in the August 27, 2016 search of the 12-man cell, and the BCI analysist who tested the substances recovered during the search. C.C. testified he entered the Fayette County Jail in July 2016, and was placed in the 12-man cell. [footnote omitted] C.C. stated that prior to appellant being placed in the 12-man cell, there had not been any drug use in the cell. However, after appellant's arrival in the cell, heroin, methamphetamine, and cocaine were being passed around and used by the inmates. C.C. observed a change in behavior by inmate Tanner after appellant's arrival in the cell; Tanner became more outgoing and appeared happy after interacting with appellant. C.C. observed that Tanner had his own bag of methamphetamine "for a small period of time."
>
> [*P5] Deputy Kyle Lower testified that he was one of the officers who searched the 12-man cell on August 27, 2016. Lower explained

he was assigned to isolate and detain appellant before appellant's bed and the nearby area could be searched. Upon entering the 12-man cell, Lower observed appellant lying in his bed, which was located on the bottom bunk of the bed closest to the cell's shower area. When appellant saw Lower approach, appellant turned away from Lower and tried to get out of his bed on the side furthest away from Lower. Lower grabbed appellant and told him to exit the bunk on the side the deputy was standing on. As appellant did so, Lower saw appellant make a tossing motion with his hand. Lower handcuffed appellant and had him taken out of the cell by another officer. Lower then searched the area by appellant's bunk and found a baggie containing a white substance on the floor. Lower turned the baggie over to Sergeant Charles Kyle.

[*P6] Deputy Jason Havens testified that he is a K-9 handler. On August 27, 2016, Havens walked his narcotics certified K-9 through the 12-man cell. The K-9 alerted on the corner of the bottom bunk located closest to the shower area. This bunk was identified as appellant's bunk.

[*P7] Deputy Christopher Self testified he was also involved in the search of the 12-man cell. Self secured Tanner so that the cell could be searched. Self, along with Sergeant Kyle, escorted Tanner and appellant out of the 12-man cell and secured the two inmates in another area of the jail. Self then returned to the 12-man cell to assist in the search. Upon returning to the cell, Self observed a white baggie located under appellant's bunk. Self testified another officer, Deputy Wright, picked up the baggie and gave it to Sergeant Kyle.

[*P8] Sergeant Kyle testified that after being advised by an inmate that appellant and Tanner were in possession of narcotics inside the 12-man cell, he oversaw the August 27, 2016 search of the cell. Kyle denied that Deputy Lower had handed him a baggie of evidence located during the search. Rather, Kyle testified, it was Deputy Wright that turned over a baggie of narcotics that had been found in the cell near appellant's bed. The baggie was "cloudy," and it held three smaller baggies inside of it.

[*P9] Kyle explained that at the time of the search, there were a number of inmates housed in the 12-man cell. Appellant, who was nicknamed "Bubby," had been placed in the 12-man cell on August 18, 2016. Tanner, who was nicknamed "J-Money," had been placed in the cell shortly after being booked into the jail on August 3, 2016. Two other inmates, S.W. and G.B., had also been placed in the 12-man cell after being booked into the jail on August 3, 2016 and June 29, 2016, respectively. Kyle testified that Tanner's bed inside the 12-

7

man cell was on a top bunk near the front of the cell, well-away from the shower area where appellant's bunk was located.

[*P10] Kyle testified that a portion of the search of the 12-man cell was recorded. A six-minute recording of the search was admitted into evidence. The video ended before Deputy Havens arrived with his K-9 to search the cell and it does not depict Deputy Wright finding a bag of narcotics under appellant's bed, as Deputy Self described. The video did, however, record the beginning of the search, when appellant was on his bed as Deputy Lower approached to restrain him. The video shows Deputy Lower shaking out appellant's bed linens, finding a small baggie on the floor near appellant's bunk, and picking up the baggie after appellant was escorted from the cell.

[*P11] Michele Taylor, a forensic scientist at BCI, testified that the substances recovered from the August 27, 2016 search were tested at BCI. The baggie holding the brown substance contained 3.45 grams of fentanyl, the baggie holding the crystalline substance contained 5.42 grams of methamphetamine, and the baggie holding the off-white substance contained 0.33 gram of cocaine.

[*P12] Following the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. The trial court granted appellant's motion in part, finding the state failed to present sufficient evidence to sustain a conviction for aggravated trafficking in fentanyl, aggravated trafficking in methamphetamine, and trafficking in cocaine. The court denied appellant's motion for acquittal on the remaining charges.

[*P13] Appellant then presented testimony by two inmates, G.B. and S.W., who had been housed in the 12-man cell in August 2016. G.B. testified that in August 2016, he saw "J-Money" with drugs and "J-Money" gave him methamphetamine. G.B. did not see appellant with any drugs. G.B. believed that at the time of the August 27, 2016 search, he had been using methamphetamine in the jail for approximately 10 days. S.W. likewise testified that the drugs found in the 12-man cell were "J-Money's" drugs as "J-Money" had methamphetamine in the cell.

[*P26] Appellant was found guilty of aggravated possession of methamphetamine, aggravated possession of fentanyl, and possession of cocaine, all in violation of R.C. 2925.11(A). Pursuant to R.C. 2925.11(A), "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." With respect to appellant's possession of methamphetamine, where the

8

"amount of the drug involved equals or exceeds the bulk amount but is less than five times the bulk amount, aggravated possession of drugs is felony of the third degree, and there is a presumption for a prison term for the offense." R.C. 2925.11(C)(1)(b).

[*P27] Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be actual or constructive. *State v. Fultz*, 12th Dist. Butler No. CA2015-06-103, 2016-Ohio-1486, ¶ 12. Constructive possession exits when one is conscious of the presence of the object and able to exercise dominion and control over it, even if it is not within one's immediate physical possession. *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 22. "Constructive possession may be proven by circumstantial evidence alone." *Fultz* at ¶ 12. Absent a defendant's admission, the surrounding facts and circumstances, including a defendant's actions, are evidence that a trier of fact may consider in determining whether the defendant had constructive possession. *Graves* at ¶ 22. "The discovery of readily accessible drugs in close proximity to the accused constitutes circumstantial evidence that the accused was in constructive possession of the drugs." 2012-Ohio-3205, at ¶ 13.

[*P28] "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Further, "[a] person has knowledge of circumstances when the person is aware that such circumstances probably exist." Id.

[*P29] Appellant argues that the state presented "conflicted testimony" by the deputies as to which officer located the drugs and how many bags of drugs were actually found during the search. Appellant contends that this conflicting testimony combined with the state's failure to present any evidence directly placing the drugs found in the cell in appellant's possession is a "fatal flaw" to the state's case and should have prevented a guilty verdict. We disagree, as it was within the province of the jury, as the trier of fact, to take note of any inconsistencies in the testimony and resolve them accordingly, believing all, part, or none of each witness's testimony. *State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, ¶ 24. See also *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964) (recognizing that the jury, as the "sole judge of the weight of the evidence and the credibility of witnesses," may

"believe or disbelieve any witness or accept part of what a witness says and reject the rest").

[\*P30] In the present case, after reviewing the record, weighing inferences and examining the credibility of the witness, we find that appellant's convictions for aggravated possession of methamphetamine, aggravated possession of fentanyl, and possession of cocaine are supported by sufficient evidence and are not against the weight of the evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the possession offenses proven beyond a reasonable doubt. The state presented testimony that after appellant entered the 12-man cell on August 18, 2016, drugs appeared in the 12-man cell. When a search was conducted on August 27, 2016, Deputy Lower saw appellant make a tossing motion. Lower then searched appellant's bed and the area nearby it and found a baggie containing a white substance. The baggie was turned over as evidence and was found to contain three separate baggies. Subsequent testing of the substances found in the baggies by BCI indicated the brown substance was 3.45 grams of fentanyl, the crystalline substance was 5.42 grams of methamphetamine, and the off-white substance was 0.33 gram of cocaine. Further, in addition to Lower's testimony about finding the drugs near the shower area located by appellant's bunk, the jury heard testimony from Deputy Havens that his K-9 alerted on the appellant's bunk, near the corner of the bunk closest to the shower area where Lower found the drugs.

[\*P31] These facts - appellant's tossing movement, the location where the drugs were found, and the fact that the narcotics K-9 alerted on appellant's bunk near the area where the drugs were located - are circumstantial evidence that appellant knowingly possessed the methamphetamine, fentanyl, and cocaine in question. As we have previously held, "[c]ircumstantial evidence has the same probative value as direct evidence." *State v. Evans,* 12th Dist. Warren No. CA2017-04-049, 2018-Ohio-916, ¶ 65, citing *State v. Young*, 12th Dist. Butler No. CA2016-10-201, 2018-Ohio-701, ¶ 61; and *Jenks*, 61 Ohio St.3d at 272. Therefore, given the evidence presented at trial, we find that the jury did not lose its way and create such a manifest miscarriage of justice such that appellant's convictions for aggravated possession of methamphetamine, aggravated possession of fentanyl, and possession of cocaine must be reversed and a new trial ordered. As appellant's convictions were not against the manifest weight of the evidence, we necessarily conclude that the state presented sufficient evidence to support the jury's finding of guilt and to overcome appellant's

> motion. See *Jones,* 2013-Ohio-150 at ¶ 19. Appellant's first and second assignments of error are overruled.

*Lark*, 2018-Ohio-4940.

Lark has filed no reply to argue why these conclusions by the appellate court are either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts. Looking back at the argument Lark made on direct appeal, the Magistrate Judge notes it was focused on the absence of direct evidence and the State's reliance on circumstantial evidence (Appellant's Brief, State Court Record, ECF No. 3, PageID 47-48).

"Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011), quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1993); *United States v. Wettstain,* 618 F.3d 577, 583 (6th Cir. 2010); *United States v. McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *United States v. Kelley,* 461 F.3d 817, 825 (6th Cir. 2006); *United States v. Reed,* 167 F.3d 984, 992 (6th Cir. 1999); *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir. 1992).

"[D]irect evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960)(Brennan), citing *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508, n. 17(1957). As an example, identification by DNA evidence is only circumstantial, but its can scientifically prove probable identity to the degree of one in many times the current population of earth, obviously far better than eyewitness identification. See Loftus, Eyewitness Testimony (1996); Garrett, Convicting the Innocent: Where Criminal Prosecutions Go Wrong (2011).

In this case the circumstantial evidence, believed by the jury and the court of appeals, was

11

sufficient for conviction. Petitioner's First Ground for Relief should therefore be denied on the merits.

**Ground Two: Exclusion of Exculpatory Evidence**

In his Second Ground for Relief, Petitioner asserts the trial court violated his right to due process of law when it excluded a statement made on August 29, 2016, by James Tanner who had been a cellmate of Lark's at the time of the offenses in this case.

Because Lark filed no reply, the Magistrate Judge again turns to his appellate brief. There he claimed that Tanner's statement was admissible under Ohio R. Evid. 804(b)(3). However, he also presented the federal constitutional issue, relying on *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973).

This claim regarding the Tanner statement was Assignment of Error Three on direct appeal and the Twelfth District decided it as follows:

> [*P34] In his third assignment of error, appellant contends the trial court erred when it excluded from evidence the written statement James Tanner purportedly made on August 29, 2016. Appellant maintains that the statement should have been admitted as a hearsay exception under Evid.R. 804(B)(3) as a statement against interest since Tanner was unavailable to testify and the circumstances surrounding his statement indicated the trustworthiness of the statement.
>
> [*P35] "[A] trial court has broad discretion to determine whether a declaration should be admissible as a hearsay exception." *State v. Dever,* 64 Ohio St.3d 401, 410, 1992- Ohio 41, 596 N.E.2d 436 (1992). See also *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 92, 840 N.E.2d 151. As a trial court has broad discretion in the admission or exclusion of evidence, unless the trial court has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court will not disturb the trial court's decision. *State v. Smith*, 12th Dist. Warren No. CA2010-05-

0047, 2011-Ohio-1476, ¶ 69, citing *State v. Barnes*, 94 Ohio St.3d 21, 23, 2002- Ohio 68, 759 N.E.2d 1240 (2002). An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Gearhart,* 12th Dist. Warren No. CA2017-12-168, 2018-Ohio-4180, ¶ 13.

[*P36] Appellant sought to introduce the written statement Tanner purportedly made on August 29, 2016 to Deputy Brian Carlson. On this date, Tanner was said to have been advised of his Miranda rights before waiving his rights and making the following written statement: "I had the drugs on me on the 27th of August. I was in my bunk and tossed them down to my right hoping to get rid of them or possibly not be responsible. * * * [T]hey were in one bag." When questioned about whether he was asked to write a confession to the possession of drugs, Tanner wrote, "Not at all."

[*P37] The trial court excluded Tanner's written statement from being introduced into evidence due to the requirements of Evid.R. 804(B)(3) and 804(A)(5). "Under Evid.R. 804(B)(3), the hearsay rule will not exclude a statement against interest that tends to expose the declarant to criminal liability and that is corroborated by circumstances clearly indicating the truthworthiness of the statement." *State v. Hiles*, 4th Dist. Ross No. 08CA3080, 2009-Ohio-6602, ¶ 11. See also *State v. Watson*, 12th Dist. Butler No. CA2016-08-159, 2017-Ohio-1403, ¶ 34. However, for Evid.R. 804(B)(3) to apply, the declarant must be unavailable as a witness. See Evid.R. 804(B)(3). [footnote omitted] Evid.R. 804(A)(5) provides that a declarant is "unavailable as a witness" if the declarant "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under division (B)(2), (3), or (4) of this rule, the declarant's attendance or testimony) by process or other reasonable means."

[*P38] "A declarant is not 'unavailable' within the meaning of Evid.R. 804(A) unless the party seeking admission of the hearsay evidence has made 'reasonable efforts in good faith to secure his presence at trial.'" *State v. Jenkins*, 4th Dist. Lawrence No. 05CA7, 2006-Ohio-2546, ¶ 38, quoting *State v. Keairns*, 9 Ohio St.3d 228, 230, 9 Ohio B. 569, 460 N.E.2d 245 (1984). "A showing of unavailability under Evid.R. 804 must be based on testimony of witnesses rather than hearsay not under oath unless unavailability is conceded by the party against whom the statement is being offered." *Keairns* at paragraph three of the syllabus. See also *State v. Tabor*, 12th Dist. Warren No. CA2011-07-076, 2012-Ohio-4642, ¶ 12. The

measures the proponent of the statement must undertake in order to fulfill its burden of reasonableness and good faith depend on the facts and circumstances of each case. *Tabor* at ¶ 14.

[*P39] In the present case, defense counsel testified about the steps he had taken in an attempt to procure Tanner's presence at trial. Defense counsel testified that on November 2, 2017, after learning Tanner had been released on APA supervision, he contacted the APA to inquire about Tanner's whereabouts. Defense counsel was given Tanner's parole officer's name and phone number. Defense counsel called the parole officer and left a voicemail for the officer. Tanner's parole officer did not return the call. On January 25, 2018, defense counsel placed a second phone call to Tanner's parole officer. Defense counsel again left a message with the officer, but the officer never called him back. Defense counsel discussed Tanner's whereabouts with appellant and was advised that "the word * * * was [Tanner] was homeless." Defense counsel ran Tanner through Westlaw's investigative portal but was unable to obtain a "good address" for him. Defense counsel stated he did not attempt to subpoena Tanner for trial and stated that, as of the February 15, 2018 trial date, he believed Tanner was still on APA supervision.

[*P40] After hearing the foregoing testimony, the trial court determined that appellant failed to demonstrate Tanner was unavailable as contemplated by Evid.R. 804. The record supports the trial court's determination that reasonable efforts in good faith were not made to secure Tanner's presence at trial. Running Tanner's name through an investigative portal and placing two phone calls to Tanner's known parole officer over the course of three months was insufficient to satisfy the requirements of Evid.R. 804(A)(5). Although the proponent of a statement does not need to exhaust every avenue of inquiry in an effort to obtain the declarant's presence at trial, reasonable efforts must be made. See *Tabor*, 2012-Ohio-4642 at ¶ 13-14. Here, there was no evidence introduced that defense counsel sent a letter or fax to the APA requesting information on Tanner's whereabouts, scheduled an appointment to speak with Tanner's parole officer, placed a visit to Tanner's last known address, or attempted to serve Tanner with a subpoena at said address. Given these facts, the trial court did not abuse its discretion in determining that appellant failed to make reasonable efforts to secure Tanner's presence at trial.

[*P41] As appellant failed to demonstrate Tanner's unavailability as a witness as contemplated by Evid.R. 804(A)(5), we find that the trial court did not err in excluding Tanner's written statement from evidence. Further, because Tanner was not "unavailable as a

> witness," this court need not review the trial court's finding that appellant failed to demonstrate the trustworthiness or reliability of Tanner's written statement. Appellant's third assignment of error is, therefore, overruled.

*Lark*, 2018-Ohio-4940.

Although the trial judge found that Tanner had not been shown to be unavailable within the meaning of Ohio R. Evid. 804(A)(5) or that "corroborating circumstances clearly indicate the truthworthiness of the statement" as required by Ohio R. Evid. 804(B)(3), the Twelfth District decided only the unavailability question.

A fair opportunity to present a defense in a criminal case is a constitutional right. *Baze v. Parker,* 371 F.3d 310, 323 (6th Cir. 2004), *citing Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Few rights are more fundamental than that of an accused to present witnesses in his own defense. *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973)(citations omitted). However, a defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *Id.* Judges have a wide discretion to exclude evidence which is only marginal. *Crane*, 476 U.S. at 690. The right to present relevant evidence is not unlimited, but subject to reasonable restrictions. *United States v. Scheffer*, 523 U.S. 303, 308 (1998), and may bow to accommodate other legitimate interests in the criminal trial process. *Rock v. Arkansas*, 483 U.S. 44, 55 (1987). The right to present a complete defense means that any state evidentiary rules used to exclude evidence cannot be "arbitrary" or "disproportionate to the purpose they are designed to serve." *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir. 2010) *quoting United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Chambers was on trial for murder. He called as his first witness another person who had confessed to the crime but then recanted on the witness stand. He was precluded from cross-examining the witness under the common-law rule, abolished now in Ohio, the federal courts, and

15

most other jurisdictions, that a party "vouches" for the credibility of witnesses he calls and cannot cross-examine them. Chambers was also precluded by the hearsay rule from presenting three other witnesses to whom the first witness had made out-of-court confessions; Mississippi at the time also did not recognize a hearsay exception for declarations against penal interest as is recognized in Ohio R. Evid. 804(b)(3). The Supreme Court held the cumulative effect of these holdings prevented Chambers from receiving a fair trial. *Chambers* upholds the application of the hearsay rule generally in criminal trials and in particular does not question the unavailability requirement for some hearsay exceptions. And of course Fed. R. Evid. 804 contains the same requirement.

Given that the unavailability requirement is not itself unconstitutional, the issue before this Court is whether the Ohio courts' finding that Lark had not shown Tanner was unavailable is a reasonable determination based on the evidence presented. The Magistrate Judge concludes that determination was not unreasonable. Trial counsel made only the two telephone calls to the Adult Parole Authority. When those were unsuccessful, he relied on the hearsay conveyed by his client, to wit, that Tanner was homeless.

Because the state courts reasonably concluded Lark had not proven Tanner was unavailable to testify, their conclusion is entitled to deference under 28 U.S.C. § 2254(d)(2). The Second Ground for Relief should therefore be dismissed on the merits;

**Ground Three: Prejudicial Delay**

In his Third Ground for Relief, Lark claims he received ineffective assistance of appellate counsel when his appellate attorney did not raise as an assignment of error that he received ineffective assistance of trial counsel when his trial attorney did not make a claim of prejudicial

pre-indictment delay.

In his Application to Reopen the direct appeal under Ohio. R. App. P. 26(B), which he filed *pro se,* Lark asserts the offenses in this case occurred on August 27, 2016, and he was not indicted until April 21, 2017, virtually eight months later (State Court Record, ECF No. 3, Ex. 13, PageID 139). The Indictment supports this chronology. *Id.* at Ex. 1. Lark argued the issue as if the sole question before the Twelfth District was whether he had suffered prejudice by the delay and pointed to the exclusion of the Tanner statement. But that was not the issue on the 26(B) application. Instead, Lark had to show it was deficient performance of his trial attorney not to raise this claim in the trial court and then that that it was deficient performance by his appellate attorney not to raise that failure as an assignment of error.

In deciding this claim, the Twelfth District employed the correct federal standard as enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984). State v. Lark, Case No. CA2018-03-04 (Ohio App. 12th Dist. Jun. 13, 2019)(unreported; copy at State Court Record, ECF No. 3, Ex. 14). The appellate court relied on its own prior finding on direct appeal that Lark had not proven Tanner was unavailable, undermining any prejudice claim. It also found Lark had not produced any evidence that the State waited to indict until Tanner was unavailable. Finally, it concluded:

> Under *Strickland*, a court must apply a heavy measure of deference to counsel's judgments, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Moreover, the basis of appellant's claim is counsel's failure to raise certain issues on appeal and appellate counsel need not raise every possible issue in order to render constitutionally effective assistance. *State v. Burke,* 97 Ohio St.3d 55, 2002-Ohio-5310, ¶ 7. See *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308 (1983).

*Id.* at PageID 151.

The conclusion that Lark did not suffer ineffective assistance of appellate counsel in the manner claimed is not an unreasonable application of Supreme Court precedent. Delay is presumptively prejudicial only where the post-accusation delay approaches one year. *Doggett v. United States*, 505 U.S. 647 (1992), and here it was only seven months. While Tanner was not found to testify, two other cellmates were present to testify in Lark's behalf. Thus it is hardly clear that a motion to dismiss made in the trial court would have been successful.

The Twelfth District's conclusion that this argument was sufficiently weak that its omission did not constitute ineffective assistance of appellate counsel is a reasonable application of Supreme Court precedent and thus entitled to deference under 289 U.S.C. § 2254(d)(1). The Third Ground for Relief should therefore be denied.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

April 4, 2020.

s/ *Michael R. Merz*  
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.